Swortzell v. Martin.

SWORTZELL, Executor, v. MARTIN, Sheriff.

I. Per COLE, J., LOWE and DILLON, JJ., concurring.

1. JUDICIAL SALE: INADEQUACY OF PRICE. *Semble*, that where the inadequacy of price is great, the bidders few, and the sheriff has failed judiciously to exercise the power to adjourn the sale, an application to set it aside should be sustained if seasonably made.

2. SAME: DUTIES OF SHERIFF. For many purposes a sheriff in conducting a judicial sale is to be considered as the agent of both parties; while he is

required to be diligent in securing the money due to the creditor, he is invested with a sound discretion as to the time, place and manner of sale; and this discretion must be exercised with a fair and impartial attention to the interests of all concerned.

3. SAME: IMPROPER CONDUCT OF SHERIFF. Censurable conduct on the part of the sheriff is not alone sufficient to set aside a judicial sale when it is not shown that the purchaser was connected with such conduct.

4. SAME: FORFEITED BID. Upon the failure of the successful bidder at a judicial sale to pay the amount of his bid, the sheriff may either proceed against him for the amount or treat the sale as a nullity and proceed to sell again. The sheriff cannot, on a subsequent day, accept an unsuccessful bid, and convey the property, without a resale.

5. SAME. When the successful bidder at sheriff's sale forfeited his bid, and on the day following the next highest bid was accepted, and a certificate of sale executed by the sheriff without again exposing the property to public competition, it was held that such certificate and a subsequent deed, executed in accordance therewith, were absolutely void.

II. Per WRIGHT, Ch. J., not concurring.

1. SHERIFF SALE: BID OF JUDGMENT DEFENDANT. A bid made by the judgment defendant at a sheriff's sale should be disregarded by the officer.

*Appeal from Buchanan District Court.*

FRIDAY, JUNE 24.

ON the 14th day of January, 1858, the defendant, Martin, as sheriff, sold on execution a certain eighty acres of land belonging to the plaintiff's testator. Without setting out in detail the pleadings, it is sufficient to state that the proof established that on the day above named, and at the sale, Hastings, one of the defendants, bid one hundred and sixty dollars for the land, and the defendant in the execution, Sheperd Cordray (the plaintiff's testator), bid one hundred and sixty-one dollars, and the land was, by the sheriff, struck off to Cordray as the purchaser. This was between four and five o'clock P. M. Cordray immediately left the place of sale, to find (as he declared) certain persons (Biddington and Ketch, who, or one of whom, had expressed a willingness to aid him), to obtain the money to pay his

bid. The sheriff did not again see him that day, nor did the sheriff on that day, or at any subsequent time, re-expose the said land for sale. On the next day, or within a few days, the sheriff concluded, without any re-advertisement or other sale, "to fall back on the bid of Hastings," for $160. Hastings agreed to this, and the sheriff returns that on the day and at the place advertised, he sold the property to Hastings as the highest bidder, for $160. His return is silent as to a previous advertisement of the said land for sale, under the same writ, in December, 1857, and a post-ponement at that time of said sale, for three days. The sheriff issued to Hastings the usual certificate of sale, and after the expiration of a year made to him a deed.

Cordray died, and on the 11th day of December, 1858, the plaintiff qualified as his executor, and on the 14th day of March, 1859, commenced this suit to set aside the sheriff's deed to Hastings, making the sheriff, Hastings, and the heirs of Cordray, parties defendant.

The plaintiff alleges that debts against the estate have been allowed to the amount of $570; that the personal estate has been exhausted; that there is still due from said estate $500, and that no property but that in question, exists, with which to pay the said debts.

The petition prays relief on three grounds mainly: 1st. Inadequacy of price; 2d. Fraudulent combination between the sheriff and Hastings; and, 3d. Because the property was never sold to Hastings, and consequently, he had no right to a certificate or deed therefor.

The answers deny the material portions of the petition. The facts, other than above stated, will be set forth in the opinion. The Court below granted the relief prayed, and set aside the sheriff's sale and deed "for fraud and collusion between the said Martin (sheriff) and the said Hastings." Martin and Hastings appeal.

*Bissell & Shiras* for the plaintiff and appellee.

*Allison & Crane* for the defendants and appellants.

DILLON, J.—I. One ground for the relief asked is, the inadequacy of the consideration. Only one witness (Biddinger) testifies as to the value of the land, and he places it at "about twenty dollars per acre."

At this estimate, it would be worth in the neighborhood of $1,600. It was sold (according to the defendants' theory) for $160. Whether, under the authorities in this State (*Cavender* v. *Heirs of Smith*, 1 Iowa, 307, 355; *Singleton* v. *Scott*, 11 Iowa, 599, 11 Id., 97, and cases cited), and elsewhere (*Roe* v. *Russ*, 2 Ind., 99; *Waller* v. *Tate*, 4 Ben. Monr., 529; 5 Harring., 129, 394; *Howell* v. *Baker*, 4 Johns. Ch., 118; *Wright* v. *Wilson*, 2 Yerg., 294), this inadequacy, considered in connection with the other circumstances of the case, would be available to set aside the sale and deed, we do not propose to discuss or determine. We merely state that our inclination is that, when the inadequacy is great, the bidders few, and the sheriff has not judiciously exercised the power to adjourn, which the statute gives him (Revision, § 3314), the sale should be set aside, if applied for seasonably. Am. Law, Reg., vol. 2 (N. S.), 737, § 33. In the view we take of this case, it is not necessary to pass upon this ground for relief. But this circumstance is, nevertheless, material as an element in considering the general equities between the parties.

II. The Court below founded its decree upon the ground of fraudulent combination and collusion between the sheriff and Hastings.

This Court, after having most attentively examined all the evidence, has been unable to reach the conclusion that Hastings intended or designed to commit any fraud upon Cordray, or was a party to any scheme of this character.

The inculpatory testimony offered for this purpose is not sufficient to establish the charge; and looking at all the circumstances, we think they clearly exonerate him from any positive and actual fraud. But the sheriff's conduct, either from design, or a mistaken sense of his duty, is not equally free from blame; and while his unexplained course, under the execution, cannot be legally approved, it would, perhaps, be doing him injustice to hold that he meditated and endeavored, knowingly, to practice a fraud upon Cordray or his rights. It is important that persons exercising the duties of the office of sheriff should know their exact relations, and perform scrupulously their duties to the parties. The sheriff is a public officer. He is not alone the agent of the creditor.

While he is to obey the writ, and use all proper diligence, and take all proper means to execute its command, he cannot become the tool or a pliant instrument in the hands of either party, for the purpose of favoring the one, or oppressing the other. *McDonald* v. *Neilson*, 2 Cow., 139.

He should never forget that he is, for many purposes, the agent of *both* parties, in the execution of the power with which the law invests him. As to the time of sale and adjournment of sale, the statute (Rev., §§ 3314, 3320) confides to him a certain measure of discretion. And beyond the statute, while he is to be diligent in securing the money he is directed to levy, he is impliedly vested with a sound discretion, as to the time, place, and manner of sale. *Neilson* v. *McDonald*, 6 Johns. Ch., 201; 2 Cow., 139.

And this discretion must be exercised with a fair and impartial attention to the interests of *all parties concerned*. Where, on the day first fixed there are no bidders at all, or where the amount bid is grossly inadequate, he should ordinarily postpone the sale (Rev., § 3314), especially if it is requested by the debtor. But if, on the day appointed, the debtor is present with his friends, and desires the sale

to go on, or does not object thereto, it should not be capriciously or without cause adjourned, much less adjourned for the purpose of aiding the creditor or proposed purchasers, or of embarrassing the debtor. Good faith and good judgment are all that the law requires, and these may not be dispensed with.

In the light of these principles, the course of the sheriff is open to censure. He first advertised the land for sale on the 11th or 12th of December, 1857. On that day Cordray and his friends were present, one of whom (Biddinger) testifies that he was there at Cordray's request, intending to purchase the land for Cordray's benefit. This was declared to the deputy sheriff (Chandler), but as the sheriff (Martin) had given him orders, that "he wished to be at the sale, or to sell the land himself," and "not to offer the land for sale, but to adjourn if he was not there," the deputy peremptorily adjourned the sale for three days. On the same day the sheriff, according to the uncontradicted testimony of Lee, returned and informed the witness that he was going to offer the land for sale. Witness told him that his deputy had adjourned the sale, and Cordray and his friends, who were prepared to bid on the land, had gone home. He replied that he had made an arrangement with Hastings to bid on the land. It was not sold on that day. At the day and place to which the sale was adjourned, the sheriff stated to Lee (who, it appears, acted for Cordray), that he should not offer the land on that day. But he gave no reason for not doing so. He subsequently re-advertised it for sale on the 14th day of January, and sold it, as set forth in the statement of the case above given. In the *interim* between the two times fixed for the sale, the sheriff, in answer to a question of Lee, said he thought the land "would be sold on the 14th of January, as advertised, as Hastings had agreed to bid the amount of the judgment and costs." Witness told him "he thought

Swortzell v. Martin.

he was making himself rather officious." He replied "he meant to be; that *Shep.* was in their way down there, and he meant to sell him out." This reply may have been made in anger, and because provoked by Lee's remark, and not because such were his real feelings and intention. Yet it is not explained. But as Hastings is not connected by the testimony with all or any of these circumstances, he is not to be considered as affected by them. And we are all satisfied that a decree against him, on the ground of fraudulent combination with the sheriff, would be unwarranted.

III. Only one question yet remains, and that is whether the plaintiff is entitled to relief, on the ground that the sheriff never made any legal sale, or in fact any public sale of the land to Hastings.

As will be seen, by recurring to the statement, the land was struck off to Cordray, and not to Hastings; and this was done in the presence of Hastings. The latter was cognizant of all the facts which transpired at the sale. We are not satisfied that Cordray made the bid in bad faith. He had had the promise of assistance at the time of the former sale, and probably expected it now from the same source.

And now the question is, had the sheriff the right, after receiving Cordray's bid, and acting upon it, and declaring him to be the purchaser, subsequently, after the lapse of one or more days, without any re-advertisement or resale, to fall back on the bid of Hastings?

Most clearly, we think not, both upon the statute (which plainly points out the course and duty of the officer), and upon the reason of the thing. The statute (§ 3320) declares that, "when the purchaser fails to pay the money when demanded (and this demand may, of course, be made at the sale), the plaintiff or his attorney may elect to proceed against him for the amount, otherwise the sheriff *shall treat the sale as a nullity and may proceed to sell again* on

the same day or after a postponement, as above (§ 3314) authorized."

But it is argued that the bid of the execution debtor was inoperative, and the officer might disregard it. It is probable that he might disregard it. It is certain that he could, if the debtor's bid be received and accepted, require him, to pay the money, and if not paid, treat the bid as a nullity, and proceed to sell again on the same day, or after a postponement made, as authorized by law.

The accepted bid of the debtor is not void. If he had paid the money on his bid, when demanded, the execution would have been satisfied, the same as if the money had been received from a stranger. The debtor might receive a sheriff's certificate and deed, but they would, of course, have no other effect than if he had paid the debt, and had the execution returned satisfied.

We cannot concur in the proposition of appellants' counsel that the bid was the same as no bid, it having been received by the sheriff. The sheriff must act upon that bid, and reject or receive it. If he receives it and declares the debtor to be the highest bidder and the purchaser, he must, under the statute, proceed against him for the amount, or annul the sale, and resell. Rev., § 3320; *Kinney* v. *Showdy*, 1 Hill, 544.

This case, in this aspect of it, is in principle like *Russell* v. *Gibbs*, 5 Cow., 390. It was there held that a plaintiff bidding on his own execution is not bound to pay the money. But if there be a dispute between him and another creditor, as to which execution the money is to apply, the sheriff may refuse the plaintiff's bid, or refuse to deliver the property till the money be paid, and if not paid according to the bid made, he should proceed to have the *property resold*. But if, instead of pursuing this course, he sells and delivers the property to the plaintiff in the writ, he cannot maintain an action for the price bid, if the plaintiff shows

that he would have been entitled to receive it if the sheriff had brought it into court.  So here, on Cordray's failure to pay the money, the sheriff had, under the statute, but one of two courses to take, either proceed against him for the amount, or treat his bid as a nullity and sell again.

We now proceed to show that to fall back on the *next* day, upon a prior bid, and issue a certificate of sale to a person whose bid was not accepted, and who did not become the purchaser, is not only subversive of the statute, but might, in many instances, work a great prejudice to the debtor.

By the express direction of the statute, sheriffs' sales "*must* be at public auction." Rev., § 3313.  It is implied in such a sale that there must be one or more bidders.  The successful bidder, that is the highest bidder, whose bid is accepted, becomes the purchaser.  "Every bidding is nothing more than an offer on one side, which is not binding on either side until it is assented to, and that assent signified on the part of the seller by knocking down the hammer." 2 Kent Com. 537.  The very object of an auction is to ascertain from the public biddings, the price at which the property offered for sale is to become the purchaser's.  If a bid is made and accepted by the seller, this constitutes a contract, a valid and binding contract, and one which can be enforced either by or against the purchaser. *Jackson* v. *Catlin*, 2 Johns., 248, 259; *Lee* v. *Mahoney*, 9 Iowa, 344; *Simonds* v. *Catlin*, 2 Canes, 61.

Now, what was the attitude and what were the rights of the parties on the next day after the sale?  If Hastings had attempted to enforce his bid, a complete answer would have been, " you are not the purchaser, the land was struck off to another, and not to you."  If his unsuccessful bid was attempted to be enforced against him, he could well have answered, "You are seeking to-day to enforce against me a bid which you rejected yesterday."  And,

under the authorities above cited, he might, probably, also, answer, that a sale of land by a sheriff is within the statute of frauds, and requires a note or memorandum in writing, and none such was made at the sale, declaring *me* to be the purchaser.

It is obvious then, that Hastings had no legal right to be considered, or to consider himself the purchaser.

In our judgment, the sheriff had no more right to issue a certificate of sale to Hastings, than he would to have issued it to a person who made no bid at all. Suppose Hastings had refused to allow the sheriff to fall back on him, could the sheriff fall back on the bidder next prior to him? Assuredly not; and yet such prior bidder would have the same kind of a claim that Hastings now asserts.

But it is insisted that Cordray's own failure to pay his bid, estops him and his executor from calling in question this irregularity of the sheriff.

We think not. The sheriff's issuing a certificate of sale was not simply an irregularity, it was wholly an unauthorized act. Besides, the effect of his failure to pay, is declared by the statute, when it provides that the sale may be treated as a nullity. That is, as there has been no sale, the sheriff shall proceed to make one. Cordray's failure to pay, authorized the sheriff at once to resell, but it did not authorize him, after the sale was closed, to issue a certificate to an unsuccessful bidder.

The necessity for a resale of the property, is founded upon good reasons. Persons present, seeing the debtor bidding, and endeavoring to save his property, might, from regard to him, or from a commendable sympathy which is far from being, under such circumstances, a stranger to the human breast, refuse to enter the lists as a bidder against him. But if his bid is declared to be disregarded or rejected, or if accepted, and payment is refused by him, the property is again exposed for sale, and he is ruled out of the list

of bidders, so that it becomes simply a contest between strangers, all restraint upon the freedom of competition being removed.

While we acquit Hastings of all actual bad faith, he is still legally chargeable with notice that he had no right to receive the sheriff's certificate or deed; and hence, he is amenable to the relief sought. We have treated the case the same as if the proceeding had been instituted by the testator, instead of the plaintiff, without stopping to inquire whether the latter might not, as the representative of creditors, have more enlarged equities than the former would have had.

It results that the decree below must be

Affirmed.

WRIGHT, Ch. J., *dissenting*.—The land was sold by the sheriff, January 14, 1858. Cordray died in December afterwards, and this bill was filed in March, 1859, fourteen months after the sale, and two months after the purchaser had obtained his deed. After making his bid, Cordray never offered to pay the money. Nor did he pay any more attention to the sale than though he was an entire stranger to the transaction.

Under such circumstances, I dissent from the foregoing opinion, upon two grounds:

First. Cordray had no right to bid at said sale, and he cannot complain, nor can his executor, if the sheriff, without fraud, disregarded such bid, and treated the sale as void. The sheriff was not authorized to accept the bid, and Cordray, as against the other purchaser, ought not to be heard to complain of his own wrong—of his failure to pay his own debt—of his neglect to comply with a bid made and received without authority.

Second. The application comes too late. The debtor had one year within which to redeem. This was a plain and

adequate remedy, and would have been equitable to Hastings, the purchaser. This was not done, however. Hastings obtained his deed, as was his right, and two months afterwards this bill was filed.

No excuse is shown for this delay. If either party should suffer, it seems to me it ought to be the debtor, who bid on his own property, with no apparent intention of complying with it, and has been inexcusably negligent in urging his objections to the sheriff's action, and in attacking the purchaser's title. The executor stands in no better position, as almost the entire delay occurred during the life of the intestate.

I think the decree below should be

Reversed.