N. L. CORNOY, *et al.*, v. IRA P. WETMORE, *et al.*, Defendants, W. H. McCRACKEN, Defendant and Appellant.

**Execution Sale:** SETTING ASIDE. Cornoy, plaintiff, obtained a decree of foreclosure and an order that the property be sold to satisfy the judgment and certain taxes. It was also decreed that taxes paid by defendant McCracken, were superior to plaintiff's mortgage, that plaintiff should pay said taxes, and that, else, McCracken might have execution for the amount of them. The clerk, through mistake induced by McCracken's attorney, entered up a judgment as in a case of *McCracken v. Cornoy*, and execution issued with that same error in title. Cornoy's attorney learned that execution had issued. He supposed it was to collect Cornoy's judgment as well as McCracken's claim for taxes, and in that belief, wrote the sheriff that he would bid the full amount of all claims against the property. He referred to the execution by the true title of the case. Owing to this, and to the fact that McCracken's lawyer, who knew what understanding of the matter Cornoy's attorney had, insisted upon it, the sheriff declined

Cornoy's bid, and sold the property to McCracken for a third of its value, no redemption being allowable. The sheriff says that he would have accepted the Cornoy bid, had it not been that it referred to an execution not entitled as the one under which he he was proceeding. The maker of the mortgage, against whom Cornoy's judgment runs as to deficiency, is insolvent. *Held*, setting such sale aside will not be disturbed on appeal, and that, without regard to whether the *form* of the judgment entry and execution vitiated them.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-GATE, Judge.

SATURDAY, FEBRUARY 6, 1897.

APPEAL from an order of the district court sustaining plaintiff's motion to set aside a sheriff's sale.—*Affirmed.*

*Ayres, Woodin & Ayres* for W. H. McCracken, appellant.

*H. E. Long* for appellees.

DEEMER, J.—The judgment and decree entered in the main case, were affirmed by this court, and the case is reported in 92 Iowa, 100 (60 N. W. Rep. 245). The original decree provided, that "plaintiffs pay to the clerk of this court, for the benefit of said McCracken, the said sum of four hundred and sixty-four dollars and fifty-four cents, with interest thereon at six per cent., from this date; and, in default of such payment, defendant may have an execution against said premises, and same to be sold to satisfy said amount, superior in lien to that of plaintiffs under said mortgage. It is also ordered that, in case plaintiffs pay said sum to said clerk, in redemption from said tax sale, before the issuance of execution therefor, the plaintiff shall, upon such payment, be entitled to, and are thereafter subrogated to all rights of the defendant McCracken, therein and thereto; and, if paid after

the issuance of execution in the name of said defendant, said plaintiffs shall be entitled to the same rights under the execution as said McCracken." It also provided that plaintiffs have judgment against Ira P. Wetmore in the sum of three thousand seven hundred and twenty-four dollars and ninety-one cents, one hundred and fifty dollars attorney's fees, and twenty-three dollars and twenty-five cents costs; and that a certain real estate mortgage executed to secure the notes upon which the judgment was rendered should be foreclosed; and that execution issue for the sale of the real estate to satisfy said judgment, interest, attorney's fees, taxes, penalties, etc.; and that general execution issue against Ira P. Wetmore for any balance that might remain. The decree declared plaintiffs' mortgage to be superior and prior to any lien or interest of any of the defendants save McCracken, and it found that his claim for taxes was superior to plaintiffs' mortgage lien. The clerk of the court correctly entered the plaintiffs' judgment upon the judgment docket; but, in entering the judgment and decree in favor of McCracken, he stated that a personal judgment was entered in favor of McCracken against N. L. Cornoy, Elmer E. Lapp, and Nellie B. Baldwin, for the amount of his claim, for taxes, and that such judgment was entered in a case bearing the title of "*McCracken v. Cornoy, Lapp & Baldwin.*" After the procedendo was returned from this court, and on or about the twentieth day of March, 1895, McCracken caused an execution to issue in a case bearing the last-named title, and the premises covered by the mortgage, or a part thereof, were sold under this excution for the sum of five hundred and seventy-six dollars, McCracken being the purchaser thereof. The sale was had on the twenty-seventh day of April, 1895. The land which was sold was worth about two thousand dollars. H. E. Long, who

represented the appellee herein, and also one McFarland, who, it seems, was in some manner responsible for the judgment against Wetmore upon the mortgage notes, learned in some manner that an execution had been issued for the sale of the land; and on the twenty-fifth day of April, 1895, he wrote the sheriff of Dallas county the following letter: "Dear Sir: Mr. Woodin, some days since, told me he had ordered an execution in the case of *Cornoy, et al., v. Wetmore, McCracken, et al.*, and had you levy upon the property foreclosed in the decree. I appeared for plaintiffs; Woodin for McCracken. There is, by the decree, part of the money going to McCracken as taxes, and balance to plaintiffs under their foreclosure. You can bid for the whole property in name of D. M. McFarland, the total amount of judgment on mortgage, judgment for taxes, interest, attorneys' fees, and costs, provided there are no bids on any of the property when offered separately. If there are separate bids,—that is, a bid on each piece separately offered,—please then adjourn the sale till Monday at 10 o'clock, and I will be up. It may be possible that I can get through the trial of a lawsuit here by to-morrow. If so, I will come up so as to be at the sale Saturday. I have been down with the grippe for a week, and not able to do anything. Got out of bed to come here because the court set a case peremptorily for trial to-day, and I had to be here, sick or well. If, however, I do not get to Adel to be at the sale, be sure and bid for McFarland full amount, as before directed herein, and send me an itemized statement of full costs, attorney's fees, and judgment, giving me an amount of judgment for taxes and mortgage on one statement, and costs and attorney's fees on another. Yours, [Signed] H. E. Long. Over 508 Walnut street, Des Moines, Iowa." The sheriff received this letter before the day fixed for sale; yet he gave no attention to it, for the sole and only reason, as he

says, that, when he looked at the execution which was then in his hands, he found that it was not issued in a case of *Cornoy v. Wetmore*, but in a case of *McCracken v. Cornoy, et al.* The sheriff further says that the letter was just as much an assurance to him that the money called for by the bid would be paid as if McFarland had been present and made the bid in person, and that his only reason for not recognizing it was that he had no such execution as the letter described. The sale was treated as without redemption, and the sheriff thereupon executed a deed to the defendant, McCracken.

On the thirtieth day of April, 1895, appellee filed a motion to set aside the sale for the following reasons: (1) Because of mistake of the clerk in entering up the judgment; (2) because, pending the appeal of the original cause in this court, a receiver was appointed to take charge of the property involved, and to rent and receive the profits thereof, who had not reported, and who had not been settled with at the time the execution issued; (3) because the execution was issued without authority, in a case which never had existence, and is invalid, because it does not provide for the sale of all the property to pay the full amount ordered by the decree but only to pay the taxes; (4) because the sheriff did not sell the property for the highest and best bid; (5) because the price received for the land was wholly inadequate; (6) because appellee and the sheriff were misled by the form of the execution. It is contended on behalf of appellant that the court erred in sustaining this motion, and that none of the grounds alleged are sufficient to justify the setting aside of the sale. A great many questions are argued by counsel which we do not find it necessary to consider. These are the pivotal facts which the court was authorized to find from the record: Long, who was the attorney for Cornoy, and who represented

McFarland, understood that the execution issued in this case was a special one for the sale of the whole property, to pay not only the amount of the appellee's judgment, but also McCracken's claim for taxes. On the strength of this understanding, he wrote the letter to which we have referred, and made a bid which the sheriff says he would have accepted had the execution been properly entitled. By reason of the mistake of the clerk in abstracting the judgment, and issuing the execution in the form he did, the bid of McFarland was not accepted. McCracken, through his attorney, had notice of Long's understanding of the matter, of the letter, and of the mistake of the clerk before the land was offered for sale, and yet he induced the sheriff to ignore the bid, and insisted upon recognition of his offer for the land. The original judgment defendant, Wetmore, is insolvent. The land was worth, as we have said, about two thousand dollars. It sold for five hundred and seventy-six dollars. The sale cannot be redeemed from because of the appeal in the main case. It also appears that the abstract in the judgment docket was entered, as it appears, at the suggestion of McCracken's attorney. With these facts before us, it is of little consequence to determine whether or not the judgment, as entered by the clerk, and the execution issued thereon, are valid. It may be that the irregularities are not such as of themselves to vitiate the sale. But here is a case where, by reason of mistake in the form of the judgment, and in the title of the execution, both plaintiff and the sheriff were misled, and, in consequence thereof, the land was not sold to the highest and best bidder. Had the execution been in proper form, the sheriff says he would have recognized the McFarland bid. If this had been done, McCracken would not have been the highest and best bidder. Moreover, both the sheriff and McCracken's attorney knew that Long had a

misunderstanding in the matter, and the attorney knew that Long intended to bid in the property; that is, all of it covered by the decree of foreclosure, for the amount of all the claims against it. The attorney for appellant also knew that Long was insisting that but one execution should issue in the case; yet, notwithstanding this, he orders an execution to issue on the judgment or claim of McCracken alone, and insists upon a sale being made to his client after he knew of the McFarland bid.

Under these circumstances, should the sale be allowed to stand? Authorities are of little help in the solution of such a question, for each case must, of necessity, be governed by its own facts. If the land was subject to redemption, there would be more reason for saying that appellee should avail himself of some other remedy; but here there is no redemption, —no day of grace. The lands sold for less than one-third of their value, and, according to appellant's contention, he may hold them free and clear of all claims of appellee thereto, notwithstanding the judgment and decree gives plaintiff a junior lien thereon, and permits him to protect himself from the appellant's claim for taxes. Under the facts disclosed by the record, it appears that McCracken was not the best and highest bidder, and the sheriff should have either accepted the McFarland bid, or he should have adjourned the sale, in order that McFarland might be advised as to the facts connected with the issuance and form of the execution. While it is likely no actual fraud was intended, yet there was that which in law amounts to a legal fraud,—which is sometimes defined to be "a mistake of one party, taken advantage of by another,"—and the sale was rightly set aside for this reason. We are not to be understood as holding that the sheriff was required to accept such a bid as the one contained in the letter referred to. It rests with him to say whether

he will recognize it or not. If he concludes to do so, and makes no objection to its form, no other person can complain; provided, of course, that the bid is followed by the money, or its equivalent. If he concludes to recognize such bid, and has no objection to urge against it except the one stated in this case, then it should be treated in all respects as regular, and a sale under such circumstances to one who had offered but a small fraction of the amount so bid, should be set aside.

We will not stop to review the cases cited by appellant in his brief. None of them were decided under a like state of facts, and it would be a waste of time to consider them at length. It will be observed that this is a direct attack upon the sale, not a collateral proceeding calling in question the validity of the execution, and that the rules of law are quite different in their application to the different classes of attack. We have taken as true the strongest version of the evidence against appellant's position, as is our duty on such appeals, and do not wish to be understood as finding that all the matters of fact recited are verities. We simply say that the court below was justified in so finding, and that, if he did so find, we cannot interfere. Our conclusions find some support in the following cases: *Swortzell v. Martin,* 16 Iowa, 519; *Cavender v. Smith's Heirs,* 1 Iowa, 306; *Fitzgerald v. Kelso,* 71 Iowa, 731 (29 N. W. Rep. 943); *Trust Company v. Shrope,* 73 Iowa, 297 (34 N. W. Rep. 867); *Lehner v. Loomis,* 83 Iowa, 416 (49 N. W. Rep. 1018). The order of the district court setting aside the sheriff's sale is AFFIRMED.